IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RANDOLPH LUCAS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 19-1338-LPS |
| | : Superior Court of the State of |
| OFFICER HAM, et al., | : Delaware in and for New Castle County |
| | : C.A. No. N196C-06-14-MMJ |
| Defendants. | : |

Randolph Lucas, Wilmington, Delaware. Pro Se Plaintiff.

Caitlyn E. Quinn, Esquire, City of Wilmington Law Department, Wilmington, Delaware.

    Counsel for Defendants Officers David Ham, David Schulz, Henry Law, Hugh Stephey, Sean Nolan, and Thomas Lynch.

**MEMORANDUM OPINION**

March 28, 2022
Wilmington, Delaware

STARK, U.S. Circuit Judge:

## I. INTRODUCTION

Plaintiff Randolph Lucas ("Plaintiff"), a former inmate in the Delaware Department of Correction, filed this action pursuant to 42 U.S.C. § 1983 in the Superior Court of the State of Delaware in and for New Castle County on June 4, 2019. (D.I. 1-1 at 5) The case was removed to this Court on July 17, 2019. (D.I. 1) The Amended Complaint is the operative pleading. (D.I. 30) Before the Court is Defendants' motion for summary judgment and Plaintiff's opposition. (D.I. 59)

## II. BACKGROUND[1]

On June 9, 2017, Defendants Corporals David Schulz ("Schulz") and David Ham ("Ham") were on patrol in the area of N. Monroe Street and W. 4th Street in Wilmington, Delaware. (D.I. 61 at 5) Schulz wore a body camera. (Id.) Plaintiff was a passenger in a maroon Chrysler Town and Country minivan that did not have a license plate. (Id.) Schulz and Ham stopped the minivan and spoke to its passengers, including Plaintiff, who was sitting in the rear passenger seat. (Id.)

Schulz returned to his police vehicle, ran warrant checks on all passengers, and discovered that Plaintiff, as well as the driver of the minivan, had active capiases for their arrest. (Id.) Defendants, Corporals Thomas Lynch ("Lynch") and Sean Nolan ("Nolan"), responded to assist Schulz and Ham with the traffic stop. (Id. at 7) None of the officers involved are identified in the body camera recording; however, reports filed by the officers describe their roles in the incident. (D.I. 61 at 5-10) A supervisor's investigative report of the incident indicates that Nolan, Schulz, Lynch, and Ham, as well as Corporal G. MacNamara (a non-defendant), were involved in the incident. (Id. at 12)

---

[1] The facts are construed in favor of Plaintiff, the non-moving party.

1

When the officers asked Plaintiff to exit the vehicle, he ran, and a foot chase ensued. (D.I. 30 at 5; D.I. 61 at 3 body camera footage at 8:23; D.I. 61 at 7, 8) Schulz, Lynch, and Nolan saw Plaintiff holding his waistband as he fled. (D.I.651 at 5, 8, 10) Plaintiff ignored the officers' verbal commands to stop. (*Id.*) Nolan warned Plaintiff that he would be tased if he did not stop running. (*Id.* at 8) Next, as Plaintiff was running, Nolan saw Plaintiff remove a handgun from his waistband and hold the firearm in his right hand. (*Id.*)

Schulz saw Plaintiff and the assisting officers descend a set of steps onto N. Adams Street and saw Nolan discharge his taser. (*Id.* at 5) The taser probes struck Plaintiff in the back, and Plaintiff was tasered for five seconds. (*Id.* at 8, 29) Plaintiff dropped the gun and fell to the ground. (*Id.* at 8, 10)

According to Schulz and Lynch, after Plaintiff had been tasered, Lynch attempted to take him into custody, but Plaintiff continued to actively resist arrest and refused repeated commands to place his hands behind his back. (D.I. 61 at 3 body camera footage at 8:45; D.I. 61 at 10) According to Plaintiff's viewing of the body camera footage, Lynch straddled over Plaintiff and punched him, MacNamara stomped on his right leg; and Schultz held Plaintiff's right arm. (*Id.* at 3 body camera footage at 8:47-8:52) According to Schulz's report, he assisted Lynch by gaining control of Plaintiff's arm and placing it behind Plaintiff's back. (*Id.* at 8) Lynch's report states that he was able to gain control of Plaintiff's hands and place him in custody. (*Id.* at 10; D.I. 61 at 3 body camera footage at 8:59-9:02) Nolan found a loaded Glock 22 handgun on the ground that Plaintiff had been carrying. (D.I. 61 at 3 body camera footage at 9:23; D.I. 61 at 10, 22)

Nolan and MacNamara transported Plaintiff to Wilmington Hospital for treatment. (*Id.* at 15, 16) After Plaintiff was treated and released from the hospital, he was charged with resisting arrest and possession of a firearm within 10 years of a prior conviction. (*Id.* at 6, 20)

In an interview, Plaintiff stated that he injured his right knee when he fell to the ground after being tased. (*Id.* at 13) He also stated he had a head abrasion, and right wrist soreness as a result of the fall. (*Id.*) Medical records indicate Plaintiff suffered a contusion of the right knee and it was recommended he take ibuprofen as needed for pain and follow-up with his physician. (D.I. 61 at 23; D.I. 68 at 3) He also sustained a small abrasion with swelling to the right posterior parietal scalp without any tenderness and no lacerations. (D.I. 68 at 2, 3) During a medical follow-up on June 21, 2017, Plaintiff provided a history of having a "run in with the Wilmington Police on 6/9/17 and they kicked him in his right knee." (*Id.* at 5) At a June 24, 2017 hospitalization for a knee tap, Plaintiff provided a history including that a police officer "stomped on leg."[2] (*Id.* at 9-10)

Plaintiff alleges excessive force by Ham, Schulz, Henry Law ("Law"), Hugh Stephey ("Stephey"), Nolan, and Lynch, and failure to intervene by Ham, Law, Stephey, Schulz, Lynch, and Nolan, all in violation of his rights under the Fourth Amendment of the United States Constitution. (D.I. 30 at 8) He seeks compensatory, discretionary, punitive, and future damages. (*Id.* at 10)

Defendants move for summary judgment on the grounds that they are entitled to qualified immunity with respect to the Fourth Amendment claims relating to excessive force and failure to intervene because Plaintiff cannot establish a constitutional violation based upon the record evidence. Plaintiff opposes and seeks to amend to add MacNamara as a new defendant (alleging MacNamara stomped on his leg). (D.I. 67)

---

[2] A June 27, 2017 MRI of the right knee provided an impression of a "rupture of the anterior cruciate ligament, large joint effusion and multifocal marrow contusions. Possible small peripheral tear of the posterior horn of the medial meniscus. Extensive soft tissue edema about the knee." (*Id.* at 14)

3

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

In reviewing a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the Court can determine that "there is no genuine issue as to any material fact" and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Finally, in determining whether a genuine dispute of material facts exists, a court may consider video evidence of the events at issue. In a case where video evidence of the events exists, a court must view the facts "in the light depicted by the video." *Scott v. Harris*, 550 U.S. 372, 381 (2007). A court "need not adopt the non-movant's version of the facts if the recording 'blatantly contradict[s]' the non-movant's version 'so that no reasonable jury could believe it.'" *McDowell v. Sheerer*, 374 F. App'x 288, 292 (3d Cir. 2010) (quoting *Scott*, 550 U.S. at 380).

## IV. DISCUSSION

### A. Personal Involvement

Defendants move for summary judgment as to Stephey and Law for lack of personal involvement. Plaintiff's opposition does not address this ground for summary judgment.

Liability in a 42 U.S.C. § 1983 action is personal in nature. Hence, to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A defendant's knowledge of a risk to health and safety "can be proved indirectly by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (internal quotation marks omitted).

There is no record evidence that Stephey and Law had any personal involvement in the June 9, 2017 incident. No reasonable jury could find for Plaintiff on the claims he raises against them. Therefore, the Court will grant Defendants' motion for summary judgment on the claims raised against Stephey and Law.

5

**B.     Excessive Force and Failure to Intervene**

Defendants move for summary judgment on behalf of Lynch, Nolan, Ham, and Schulz on the grounds that they are entitled to qualified immunity with respect to the excessive force and failure to intervene because the record evidence does not establish constitutional violations.

Plaintiff's claims of excessive force are analyzed under the Fourth Amendment's "reasonableness inquiry." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks omitted). The inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citing *Scott v. United States*, 436 U.S. 128, 137-39 (1978); *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The Court "ask[s] whether, from the perspective of the officer at the time of the incident and not with the benefit of hindsight," the officers were objectively reasonable in their use of force. *Brown v. Makofka*, 644 F. App'x 139, 142 (3d Cir. 2016) (citing *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015)). In determining whether the force used was objectively reasonable, the Court carefully considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In considering the force used to subdue Plaintiff, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal citations and quotations omitted); *see also Woods v. Grant*, 665 F. Supp. 2d 438, 445 (D. Del. 2009) (multiple taser use on fleeing suspect not unreasonable use of force), *aff'd*, 381 F. App'x 144 (3d Cir. 2010).

6

The record establishes that Plaintiff admitted he fled because he knew he had an outstanding warrant; during the chase he was seen in possession of a handgun; Nolan deployed his taser only after he warned Plaintiff he would do so if Plaintiff continued to flee and not obey commands to stop; Plaintiff did not drop his weapon until he was tasered; and video evidence shows that Plaintiff continued to resist even after he was tasered, on the ground, and while being handcuffed. Plaintiff argues that his leg was stomped, but the video does not depict that. Rather it shows an officer placing his foot on Plaintiff. Nor can it be said that the officers holding Plaintiff down and attempting to subdue and handcuff used excessive force. Even crediting Plaintiff's account as true, a mere ten seconds passed from the time Plaintiff fell to the ground to the time he was handcuffed.

The inquiry into the reasonableness of force is an objective one, made from the perspective of a reasonable officer at the scene. Having considered the use of a taser due to Plaintiff's flight from police officers, and having reviewed the video, the acts of Defendants were objectively reasonable when assessed from the vantage point of a reasonable officer on the scene. No reasonable jury could find for Plaintiff on the excessive force claims.

Accordingly, the Court will grant Defendants' motion on the issue of excessive force. Because the Court finds that no constitutional violation occurred with respect to excessive force, Plaintiff also cannot succeed on his failure to intervene claims. *See Nifas v. Coleman*, 528 F. App'x 132, 135-36 (3d Cir. 2013) (citing *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).

## V. CONCLUSION

For the above reasons, the Court will grant Defendants' motion for summary judgment.[3] (D.I. 59) An appropriate Order will be entered.

---

[3] The Court does not address qualified immunity, as summary judgment will be granted on other grounds.

7